IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILBERT WILLIAMS, :
        *Plaintiff*, : CIVIL ACTION
         :
    **v.** :
         :
OFFICER MOISES J. VELEZ, et al., : No. 16-1593
        *Defendants*. :

**MEMORANDUM**

PRATTER, J.                                                                                          MAY 10, 2017

This action arises out of an incident between Philbert Williams and Officers of the Philadelphia Police Department ("PPD"), during which Officer Velez allegedly broke Mr. Williams's left thumb. Mr. Williams brings various federal and state law claims against Officer Velez and Officer Santiago, who witnessed the incident. Additionally, Mr. Williams brings a *Monell* claim against the City of Philadelphia, alleging that the incident was part of widespread unlawful policies or customs within the PPD. The City's Motion to Dismiss the *Monell* claim is before the Court, and for the following reasons, the Court will grant the City's motion.

**BACKGROUND**

Mr. Williams's thumb injury occurred during arrest for alleged criminal trespass and attempted burglary in June 2015. On June 11, 2015, Officers Velez and Santiago, along with Officer McDevitt, approached Mr. Williams at the rear of a residential property in North Philadelphia and demanded that Mr. Williams get on the ground. He complied, and the officers handcuffed him and placed him in the back of a patrol car. Throughout the encounter, Mr. Williams pleaded with the officers to knock on the door of the residence to determine if he was a

1

lawful visitor to the property. Mr. Williams alleges that the officers never sought information on whether he was a lawful visitor.

Officers Velez and Santiago took Mr. Williams to the Ninth District police headquarters. When they were standing on the sidewalk near the entrance, Mr. Williams again asked the officers to inquire about whether he was a visitor to the property. According to Mr. Williams, Officer Velez responded by yanking Mr. Williams's left thumb and yelling, "Didn't I tell you to shut the f*** up." Am. Compl. ¶ 22. Officer Santiago supposedly observed the incident and laughed. Mr. Williams alleges that another unidentified officer witnessed the incident and ordered Mr. Williams be taken to a hospital for treatment. Mr. Williams told Officer Velez that he would sue the officers and the City, and Officer Velez laughed and replied that Mr. Williams would only get $5000 to $6000 in compensation for the injury. Officers Velez and Santiago took Mr. Williams to St. Joseph's Hospital where his left hand was x-rayed, and he received a soft cast for his left thumb and prescription pain medication.

Upon returning to police headquarters after treatment, Mr. Williams attempted to report the incident. He asked for the name of the unidentified officer who witnessed the incident with Officer Velez, but was turned away and told that revealing such information would run counter to the "buddy system." Mr. Williams also alleges that his requests to speak to Internal Affairs were rejected, and it is his understanding that the incident with Officer Velez was never reported to the PPD. Mr. Williams alleges that following the incident, he was held in a Ninth District holding cell for several days, was denied pain medication, and now continues to suffer from emotional and mental anguish as a result of the injury to his thumb.

Separate from his particular encounter with Officer Velez, Mr. Williams alleges that the City of Philadelphia had a policy or custom of failing to adequately train and/or supervise police

officers, including the officer defendants in this case. Mr. Williams appends an array of evidence to the Amended Complaint to support that such a policy or custom exists, including news articles purporting to summarize statistics about complaints filed against the City, a Report from the Department of Justice's Office of Community Oriented Policing Services entitled "Collaborative Reform Initiative: An Assessment of Deadly Force in the Philadelphia Police Department" ("DOJ Report"), and the six-month follow up assessment to the DOJ's initial report. In the DOJ Report, the DOJ and the PPD collaborated to "examine and reform deadly force policies, practices, and related processes in the PPD." Ex. D at 12. Their objectives were to "[e]nhance training as it relates to officer and public safety in deadly force situations[;] [i]mprove the quality and transparency of deadly force investigations from both a criminal and administrative standpoint[;] [s]trengthen the use of force review process[;] [and] [i]nstitutionalize organizational learning processes and practices related to deadly force incidents." *Id.* The DOJ Report "reviewed all PPD policies as they relate to deadly force" and various training programs and approaches. *Id.* at 14-17. The Report also assessed investigations of officer-involved shootings and other instances of deadly force. The bulk of the DOJ Reports' conclusions pertained to use of deadly force.

Mr. Williams's Amended Complaint includes five counts: violation of 42 U.S.C. § 1983 for Excessive Use of Force against Defendant Velez (Count I); violation of 42 U.S.C. § 1983 for Failure to Train and/or Otherwise Supervise against the City of Philadelphia (Count II); violation of 42 U.S.C. § 1983 for Failure of Bystander Officer to Intervene against Defendant Santiago (Count III); a state law claim for Intentional Infliction of Emotional Distress against Defendants Velez and Santiago (Count IV); and a state law claim for Assault and Battery against Defendant Velez (Count V). The City has moved to dismiss Count II.

3

**LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 617 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its appropriate attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential–Bache Sec., Inc.*, 764 F.2d 939, 944 (3d

Cir. 1985). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party, here, Mr. Williams. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). Nonetheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (internal quotation marks omitted), nor Mr. Williams's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The Court must also disregard "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (internal alterations omitted).

**DISCUSSION**

The City moves to dismiss the one count Mr. Williams raises against it—the *Monell* failure to train and/or supervise claim. Mr. Williams invokes 42 U.S.C. § 1983, which creates a cause of action for persons who are deprived of their constitutional rights by any person acting under the color of state law or custom. In addition to creating a cause of action against the actor who caused the constitutional deprivation, § 1983 also permits an injured party to sue a municipality. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). However, a municipality will only be liable under § 1983 in limited circumstances. A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Id.* at 691. Instead, to state a § 1983 claim against a municipality, a plaintiff must allege that (1) the municipality had a policy or custom that deprived him of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) his injury was caused by the identified policy or custom. *See Stewart v. Moll*, 717 F. Supp. 2d 454,

5

464–65 (E.D. Pa. 2010). The City takes the position that the Amended Complaint fails to allege facts supporting the existence of a policy or custom and that Mr. Williams has not properly pleaded that his injuries were actually caused by the City's supposed policy or custom. Accordingly, it urges that Mr. Williams has not met the burden imposed by *Monell*.

The City argues that Mr. Williams has failed to properly plead a policy or custom under *Monell*.[1] The Amended Complaint raises two theories of unlawful policy or custom: (1) failing to conduct "proper and balanced investigations of complaints of unreasonable use of force . . . against civilians by police officers, thereby causing and encouraging police officers . . . to engage in unlawful conduct," Am. Compl. at ¶ 52; and (2) failure to discipline or otherwise ensure compliance with procedures necessary to prevent the excessive use of force, Am. Compl. at ¶¶ 50-53. Both of the avenues to policy or custom are premised on the City's "failure to" take a given action, resulting in constitutional violations.

The Third Circuit Court of Appeals has held that a municipality may be liable when a "policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotations omitted). A subset of this type of claim

---

[1] A policy exists "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Official policy under *Monell* "often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances." *Pembauer v. City of Cincinatti*, 475 U.S. 469, 48–81 (1986). Customs "that ha[ve] not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). "In other words, custom may be established by proving knowledge of, and acquiescence to, a practice." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007). There is no allegation here that the City has a formal policy or edict condoning excessive force by PPD Officers. Instead, the Court is called upon to determine whether Mr. Williams has sufficiently pleaded a custom of doing so.

6

involves a failure to train employees under circumstances in which "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Wood v. Williams*, 568 Fed. App'x. 100, 105 (3d Cir. 2014) (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

To properly plead the "failure to" claims, a plaintiff must show a pattern of unconstitutional behavior, and without doing so, he cannot adequately state that an unconstitutional policy or custom exists to which the municipality was deliberately indifferent. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); *Owens v. Coleman*, 629 Fed. App'x. 163, 167 (3d Cir. 2015) ("A pattern of similar constitutional violations is typically necessary to demonstrate deliberate indifference for purposes of failure to train."); *Anderson v. City of Philadelphia*, No. CV 16-5717, 2017 WL 550587, at *5 (E.D. Pa. Feb. 10, 2017) (dismissing *Monell* failure to train, supervise, investigate, and discipline claim with respect to the use of force when the complaint did not allege a pattern of prior incidents).

The City argues that the Amended Complaint merely sets forth vague and conclusory allegations and parrots *Monell*'s elements. It also argues that a *Monell* failure to train/supervise claim cannot simply be predicated on isolated incidents,[2] and the documents appended to the

---

[2] The City is incorrect that *Monell* claims cannot be predicated on single incidents. In a rare and narrow category of circumstances, a "failure to train" or "lack of policy" claim may be established on the basis of a single constitutional violation. *See Connick*, 563 U.S. at 63–64. In order for a single incident to give rise to a § 1983 cause of action against a municipality, the constitutional injury at issue must be a "highly predictable consequence" of the municipality's lack of established policy or failure to train its officers to avoid such injurious conduct. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 225 (3d Cir. 2014) (quoting *Connick*, 563 U.S. at 63-64); *Washington v. City of Philadelphia*, No. CIV.A. 11-3275, 2012 WL 85480, at *8 (E.D. Pa. Jan. 11, 2012) ("To establish deliberate indifference from a single incident, a plaintiff must show that the municipality's failure to train was obviously going to lead to the constitutional violations alleged."); *See Doneker v. Cty. of Bucks*, No. 13-1534, 2013 WL 4511630, at

Amended Complaint are largely unrelated to conduct at issue in this action. In particular, the City observes that the DOJ Report focused on the use of deadly force and officer-involved shootings.³

Mr. Williams contends that, read together, his personal experience and the appended documents properly poses a *Monell* claim that the PPD pursued unlawful policies, practices, or customs to which the City was deliberately indifferent. Mr. Williams relies upon documents appended to the Amended Complaint to establish the pattern of conduct *Monell* requires. Specifically, he notes that the initial DOJ Report found, *inter alia*, that the City needed more explicit policies on use of force, training on use of force concepts was too infrequent, the City lacked a field training program, and training problems persisted in the six-month assessment. Am. Compl. ¶¶ 44–48; Pl. Br. at 5. Mr. Williams also relies upon news articles compiling statistics about police misconduct lawsuits. Am. Compl. ¶ 42; Pl. Br. at 4. Through both publicly available news and the DOJ Report, Mr. Williams contends that former City of Philadelphia Mayor Michael Nutter and former Philadelphia Police Commissioner Charles H. Ramsey were aware of, acquiesced in, or were deliberately indifferent to excessive use of force. Am. Compl. ¶ 49.

---

*6 n.4 (E.D. Pa. Aug. 26, 2013) (finding that the plaintiff failed to allege a failure to train claim based on a single incident of excessive force because he did not allege how incident was "obviously" the result of a failure to train). Here, Mr. Williams has pursued a pattern theory and has not supplied any facts that support the Court viewing this case as falling into the very narrow category of single-incident liability.

³ The City also contends that the DOJ Report should be barred under Federal Rule of Evidence 407, which makes subsequent remedial measures inadmissible to show culpability. Mr. Williams argues that considering admissibility is inappropriate at the pleadings stage and moreover, at least one judge in this District has rejected that exact argument with respect to the DOJ Report at issue here. *See Valdez v. City of Philadelphia*, No. 2:12-CV-7168-CDJ, 2016 WL 2646667, at *4 (E.D. Pa. May 10, 2016) ("[T]he Report is more appropriately viewed as a sort of 'step zero'— providing facts, data, and conclusions that would guide future policy decisions, but not the policy decisions themselves. Accordingly, the Court finds that the Report does not consist of any subsequent remedial measures that would prohibit their introduction into evidence under Rule 407."). Because this Court ultimately concludes that the *Monell* claim is insufficiently pleaded, it need not reach the question of whether the Report should be barred under Rule 407.

The City challenges the DOJ Report and the six-month assessment because they were both focused on the use of deadly force, which was not present here. Indeed, the DOJ Report was issued in response to concerns over officer-involved shootings. Ex. C. Mr. Williams urges the Court to read the DOJ Reports broadly and interpret them as showing the City's acknowledgement of serious deficiencies in the PPD. In support, Mr. Williams cites cases in this District where courts have allowed *Monell* claims supported by the DOJ Report to proceed. *See Simpson v. Ferry*, 202 F. Supp. 3d 444, 449–53 (E.D. Pa. 2016) (concluding that the plaintiff had sufficiently pleaded facts to raise the reasonable expectation that further discovery would reveal proof of his *Monell* claim). In *Simpson*, the Court reviewed cases that had relied upon the DOJ Report—the same DOJ Report attached to the Amended Complaint in this case—and concluded that "certain findings and conclusions within the Report appear to contemplate *all* use of force concepts and training initiatives within the PPD, not just lethal force." *Id.* at 451. Applying a broad view, the court read the Report to support the *Monell* claim. However, the plaintiff in *Simpson* was allegedly beaten by city police officers following a foot chase—conduct that more closely resembles the type of "deadly force" that motivated the DOJ Report. Likewise, the plaintiffs in the cases upon which the *Simpson* Court relied brought allegations of particularly brutal police conduct. *See, e.g.*, *Valdez v. City of Philadelphia*, No. 2:12-CV-7168-CDJ, 2016 WL 2646667, at *1–2 (E.D. Pa. May 10, 2016) (plaintiff was allegedly beaten and tased); *Harris v. City of Philadelphia*, 171 F. Supp. 3d 395, 398 (E.D. Pa. 2016) (plaintiff was allegedly struck with a baton and tased, resulting in injuries requiring surgical intervention). The Court recognizes that the DOJ Report may contemplate uses of force that fall below a lethal level and may make some generally-applicable conclusions, but the type of the conduct alleged here— while by no means admirable, assuming it occurred—does not resemble either the conduct

9

directly addressed in the Report or the conduct suffered by plaintiffs in the cases upon which Mr. Williams relies. Accordingly, the Court concludes that Mr. Williams has not sufficiently pleaded a *Monell* claim.

The City's Motion is entirely focused on the City's disciplinary, supervisory, or training customs, not the PPD's alleged investigatory deficiencies. In their briefing and at oral argument, the parties focus on the DOJ Report and expend minimal breath on the other documents appended to the Amended Complaint, including news articles concerning lawsuits brought against the City for police misconduct. The articles explain that approximately 1,223 lawsuits were brought against the City for police misconduct between 2009 and 2014, and during that time, the City paid out more than $40 million in settlements. *See* Exs. A & B. Mr. Williams highlights that in 2015, 180 lawsuits alleging police misconduct had been filed against the City by July—one month after the incident with Officer Velez. These facts appear to be alleged in support of Mr. Williams's allegation that the City had a policy or custom of allowing officers to use excessive force, as demonstrated by its alleged reluctance to pursue investigations. Because the Court concludes that, as pleaded here, the failure to investigate claim largely mirrors the failure to train claim, dismissal is proper.

Courts in this Circuit have found an analytical distinction between a *Monell* policy or custom rooted in failure to investigate and one rooted in training, supervision, or discipline. *See, e.g.*, *Simpson*, 202 F. Supp. 3d at 452 –456 (permitting a failure to investigate claim to proceed on the basis of statistics pertaining to police misconduct lawsuits and settlements); *Noble v. City of Camden*, 112 F. Supp. 3d 208, 224 (D.N.J. 2015) (concluding that a reasonable jury could find that the City of Camden had a custom of performing inadequate investigations of citizen complaints of police brutality, which reflected an indifference to the allegedly excessive use of

force by its officers). At summary judgment, the *Noble* court was presented with evidence showing an escalating number of excessive force complaints against police officers over the years, and evidence that few of these complaints ever resulted in a finding of misconduct. Plaintiff in *Noble* also pointed to a sample of 40 reports from the Camden Police Department Internal Affairs Unit and argued that civilian complaints of excessive force were often inadequately investigated, and there was a consistent backlog of complaints that the Police Department was aware of, but did nothing to remedy. 112 F. Supp. 3d at 223–24. While admittedly in a different procedural posture, the allegations in Amended Complaint here do not remotely resemble the type of theory put forth in *Noble*.

Here, aside from Mr. Williams's personal difficulty reporting the incident with Officer Velez to Internal Affairs, he pleads no facts supporting a pattern of investigatory failures. While Mr. Williams's recounts that his request to report the incident was rejected, the Amended Complaint does not contain any factual allegations that the PPD rejected similar requests or that investigations that did occur were somehow lacking. To the extent that Mr. Williams alleges a "buddy system" existed among officers to insulate them from complaints, statistics regarding the overall volume of complaints against the City and accompanying settlement figures simply do not provide the type of factual allegations necessary to support a theory rooted in investigatory process failures.

When Judge Goldberg relied upon these same statistics to permit allowing a pattern of investigatory failure theory to proceed in *Simpson*, he recognized that "mere allegations, and even settlements, do not establish liability or the existence of an unlawful custom" and he viewed the statistics in light of the plaintiff's personal history of being targeted by the police. *Id.* at 453. There is no similar allegation of personal targeting here, and the statistics instead simply serve to

11

illustrate that civilians have lodged misconduct complaints against the City. That numerous lawsuits have been brought against the City or that the City doled out significant funds to rid themselves of such suits does not illuminate with requisite specificity a policy of investigatory failures. Absent such specificity, the allegations of investigatory failures hold little weight because the focus is instead on the training, supervision, or discipline resulting from the investigation itself. Regardless of the manner in which investigations are (or are not) pursued, the outcome of those investigations ultimately becomes duplicative of the theory that the City failed to train, supervise, or discipline officers. Accordingly, the Court finds that Mr. Williams has not properly pleaded a *Monell* policy or custom and will dismiss Count II.[4] Should discovery reveal information that enables Mr. Williams to properly plead a *Monell* claim at a later date, he seek leave to amend his complaint.

**CONCLUSION**

For the foregoing reasons, the Court will grant the City's Motion to Dismiss Mr. Williams's *Monell* claim (Count II). An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[4] Likewise, the Amended Complaint does not properly plead that the failure to investigate or train proximately caused Mr. Williams's injury. *Monell* requires that a plaintiff allege facts demonstrating that the municipality's practice proximately caused the injuries he suffered. "A sufficiently close causal link between a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir.1987) (alterations omitted). This causal link cannot be "too tenuous." 915 F.2d at 851. The causal link in this case is "too tenuous" in large part because the type of incident here—a broken thumb during arrest—differs significantly from the type of conduct addressed by the appended documents supporting an alleged custom. Thus, for similar reasons the Amended Complaint fails to plead a policy or custom under *Monell*, Mr. Williams has not satisfied the causation element.