# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILBERT WILLIAMS,** | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | No. 16-1593 |
| **OFFICER MOISES J. VELEZ et al.,** | : | |
| *Defendants*. | : | |

## MEMORANDUM OPINION

PRATTER, J.                                                                                                OCTOBER 15, 2018

Philadelphia Police Officer Moises Velez allegedly broke Philbert Williams's left thumb after arresting Mr. Williams in June 2015. Mr. Williams now brings various federal and state law claims against Officer Velez and Officer Louis Santiago, who witnessed the incident.

With trial approaching, Mr. Williams and Officers Velez and Santiago moved *in limine* to exclude certain categories of evidence. Officers Velez and Santiago seek to exclude references to or records concerning Officer Velez's employment disciplinary history. Mr. Williams, in turn, wants the Court to exclude various categories of medical records as well as evidence relating to his past criminal convictions and the arrest that preceded his broken thumb. After the Court received briefing from both sides and discussed the motions with counsel for the parties at a conference, these issues are ripe for decision.

## BACKGROUND

Mr. Williams's thumb injury occurred after he was arrested for criminal trespass and attempted burglary. On June 11, 2015, Officers Velez and Santiago, along with another officer, approached Mr. Williams at the rear of a residential property in North Philadelphia and directed Mr. Williams to get on the ground. Mr. Williams complied, and the officers handcuffed Mr.

1

Williams and placed him in the back of a patrol car. Throughout the encounter, Mr. Williams pleaded with the officers to knock on the door of the residence where had had been located to determine if he was a lawful visitor to the property, but the officers never did so.

After securing Mr. Williams, Officers Velez and Santiago took Mr. Williams to the 9th District police headquarters. While the officers and Mr. Williams were standing outside of the 9th District, Mr. Williams again asked the officers to return to the residential property where he had been arrested to inquire about whether he was a visitor to the property. According to Mr. Williams, Officer Velez responded by yanking Mr. Williams's left thumb and yelling, "Didn't I tell you to shut the f*** up." Am. Compl. ¶ 22. Officer Santiago allegedly observed the incident and laughed. Another unidentified officer who supposedly witnessed the incident then ordered Officers Velez and Santiago to take Mr. Williams to a hospital for treatment. Mr. Williams told Officer Velez that he would sue the officers and the City, and Officer Velez laughed and replied that Mr. Williams would only get $5,000 to $6,000 in compensation for the injury. Officers Velez and Santiago then took Mr. Williams to St. Joseph's Hospital. Mr. Williams's left hand was x-rayed and hospital personnel encased Mr. Williams's left thumb in a soft cast and gave him a prescription for pain medication.

Upon returning to police headquarters after treatment, Mr. Williams attempted to report the incident. He asked for the name of the unidentified officer who witnessed the incident with Officer Velez, but was purportedly turned away and told that revealing such information would run counter to the "buddy system." Mr. Williams also alleges that his requests to speak to Internal Affairs were rejected, and it is his understanding that the incident with Officer Velez was never reported to the Philadelphia Police Department. According to Mr. Williams, the police held him in a 9th District holding cell for several days, he was denied pain medication,

and to this day he continues to suffer from emotional and mental anguish as a result of the injury to his thumb.

**LEGAL STANDARD**

"Under the Federal Rules of Evidence, subject to certain limitations, all evidence is admissible if it is relevant, i.e., if it tends to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence." *Forrest v. Beloit Corp.,* 424 F.3d 344, 355 (3d Cir. 2005); *see* also Fed. R. Evid. 401, 402. Pursuant to Federal Rule of Evidence 403, a court may nonetheless exclude relevant evidence if the probative value of the evidence is "'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.* (quoting Fed R. Evid. 403). To exclude evidence under Rule 403, "the probative value of the evidence must be 'substantially outweighed' by the problems in admitting it." *Id.* (quoting *Coleman v. Home Depot, Inc.,* 306 F.3d 1333, 1343–44 (3d Cir. 2002)). But "prejudice does not simply mean damage to the opponent's cause." *Goodman v. Pa. Turnpike Comm'n,* 293 F.3d 655, 670 (3d Cir. 2002) (internal quotation marks omitted). Only "unfair prejudice," or "prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found," can tip the scales in favor of inadmissibility. *Ansell v. Green Acres Contr. Co.,* 347 F.3d 515, 525 (3d Cir. 2003).

**DISCUSSION**

There are three motions *in limine* before the Court. First, the defendants seek to preclude evidence of Officer Velez's work disciplinary records. Second, Mr. Williams seeks to exclude certain medical records. And third, Mr. Williams seeks to exclude evidence relating to the arrest

3

that led to the incident in question and evidence of his other past convictions. The Court will address each in turn.

### 1. Officer Velez's Disciplinary Records

First, the defendants challenge the admission of Officer Velez's disciplinary records, arguing the records are (1) not relevant, Fed. R. Evid. 401, (2) improper evidence of crimes, wrongs, or other acts, Fed. R. Evid. 404(b), and (3) more prejudicial than probative, Fed. R. Evid. 403.

The Court agrees with the defendants that Officer Velez's disciplinary records are not relevant to Mr. Williams's claims and are inadmissible under Fed. R. Evid. 404(b). None of Officer Velez's official reprimands were for the use of excessive force, and therefore are not relevant to Mr. Williams's claims.[1] Officer Velez's disciplinary record also does not support Mr. Williams's argument that Officer Velez had a *modus operandi* or plan of fabricating an allegation that an arrestee became violent to justify the use of force (because none of the reprimands were for excessive force and none of the complaints alleging physical abuse resulted in a reprimand).

Mr. Williams therefore cannot introduce Officer Velez's disciplinary records. To the extent Officer Velez testifies about his disciplinary record, however, the Court will permit "questioning about specific" reprimands received by Officer Velez, but only to the extent such questions are "probative of [Officer Velez]'s character for truthfulness or untruthfulness." *United States v. Williams*, 464 F.3d 443, 448 (3d Cir. 2006) (citing Fed. R. Evid. 608(b)).

---

[1] Although Officer Velez did receive complaints alleging "physical abuse," none of those complaints resulted in a departmental reprimand.

### 2. Mr. Williams's Medical Records

Next, Mr. Williams challenges the admission of the following categories of his medical records: (1) records relating to his neck pain; (2) records relating to his foot issues; (3) records relating to his request for reading glasses; and (4) a series of records spanning almost seven months. Mr. Williams argues the records are not relevant, Fed. R. Evid. 401, and are more prejudicial than probative, Fed. R. Evid. 403.

Mr. Williams's records relating to his reading glasses and injuries other than the at-issue injury (i.e., his broken thumb), are not relevant. Fed. R. Evid. 401. Mr. Williams is only seeking to recover for damages stemming from his broken thumb, and so medical records related to other physical injuries are outside the scope of this litigation. To the extent that the defendants argue that Mr. Williams's practice of filing sick calls and inmate grievance forms may have some bearing on Mr. Williams's credibility, the Court reserves judgment, awaiting developments at trial.

### 3. Mr. Williams's Past Convictions and His 2015 Arrest

Finally, Mr. Williams challenges the admission or use of his prior criminal convictions and the facts surrounding the 2015 arrest that allegedly precipitated the at-issue injury. Mr. Williams argues that (1) all of this evidence is more prejudicial than probative, Fed. R. Evid. 403, (2) the facts surrounding his 2015 arrest are inadmissible evidence of crimes, wrongs, or other acts, Fed R. Evid. 404(b), and (3) his prior convictions are inadmissible under Federal Rule of Evidence 609.

Three of Mr. Williams's prior convictions are admissible, for the purposes of impeachment, as *crimen falsi*. *See* Fed. R. Evid. 609(a)(2). Specifically, Mr. Williams's 2010

conviction for burglary and his two 2005 convictions for burglary[2] are admissible for impeachment purposes. *See Grabski v. Logan*, No. CIV.A. 12-4978, 2014 WL 1340608, at *2 (E.D. Pa. Apr. 4, 2014) ("With respect to the burglary conviction, this offense falls under Rule 609(a)(2) as a crime of dishonesty."); s*ee also Pennsylvania Tr. Co. v. Dorel Juvenile Grp., Inc.*, 851 F. Supp. 2d 831, 845 (E.D. Pa. 2011) ("[C]onvictions for receiving stolen property and burglary both involve *crimen falsi* that are admissible to impeach his character for truthfulness under this rule.").[3] All of Mr. Williams's other prior convictions are inadmissible as cumulative and therefore prejudicial. *See* Fed. R. Evid. 609(a)(1)(A), 609(b)(1).

The events *preceding* Mr. Williams's 2015 arrest are inadmissible as irrelevant and more prejudicial than probative. *See* Fed. R. Evid 401, 403. The defendants argue that the circumstances of Mr. Williams's arrest are relevant to his motive for resisting arrest and provide context regarding Mr. Williams's disdain for the police. The Court disagrees, as the incident in question—Officer Velez allegedly breaking Mr. Williams's thumb—occurred in front of the police station, after Mr. Williams had been transported from the scene of his arrest. The Court will permit the defendants to reference the fact that Mr. Williams was in custody at the time of the alleged incident and whether he was unruly while in custody, which is more than sufficient to "complete the story," avoid jury confusion, and identify "the relationships among the players." *U.S. v. Green*, 617 F.3d 233, 249 (3d Cir. 2010) (citing Fed. R. Evid. 404(b)). The circumstances of Mr. Williams's arrest, however, are too attenuated from the at-issue incident and are therefore irrelevant and more prejudicial than probative. *See* Fed. R. Evid. 401, 403.

## CONCLUSION

---

[2] In 2007, Mr. Williams received sentences of at least one year for each 2005 conviction, meaning 10 years have not passed since Mr. Williams's release from confinement.

[3] *Cf. Walker v. Horn*, 385 F.3d 321, 334 (3d Cir. 2004) (holding robbery is not automatically admissible under Rule 609(a)(2) because "it does not involve communicative or expressive dishonesty").

For the foregoing reasons, the motions *in limine* are variously granted or denied as outlined above. An appropriate order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE